**SHINGLES & SHINGLES**                                    **Attorneys for Plaintiff**
**EVAN S. SHINGLES, ESQ.**
**I.D. No. 88918**
**834 Chestnut Street, Suite 206**
**Philadelphia, PA  19107**
**(215) 625-3742**
**Fax: (215) 574-0699**
**shingleslaw@shingleslaw.com**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENSYLVANIA

| | | |
|---|---|---|
| **HOANH TRAN** | : | **CIVIL ACTION** |
| **2823 Sherman Ave** | : | |
| **Camden, NJ 08105-4428** | : | **NO. 17-5220-KSM** |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | **COMPLAINT** |
| **LAW DEPARTMENT** | : | |
| **1515 Arch Street, 14th Floor** | : | **JURY TRIAL DEMANDED** |
| **Philadelphia, PA 19102** | : | |
| **Defendant.** | : | |

### INTRODUCTION

Plaintiff brings this action seeking damages against the Defendant acting by and through its servants, employees and agents, for depriving them and conspiring to deprive them of their rights guaranteed under the United States Constitution and the Constitution of the Commonwealth of Pennsylvania for their unlawful detention, arrest, prosecution, and imprisonment.

### JURISDICTION AND VENUE

This action is brought pursuant to 42 U.S.C.A. §§ 1983, 1985, 1986 and 1988. Jurisdiction

is based on 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory provisions. Plaintiff further invokes the pendent jurisdiction of this Court, provided by 28 U.S.D.C. § 1367, to hear and decide claims arising under state law.

Venue is appropriate in this District pursuant to 28 U.S.C. § 1392 (b) (2) because the events giving rise to Plaintiff's claims occurred within this District.

## PARTIES

1.      Plaintiff, Hoanh Tran, is an individual citizen of the State of New Jersey residing at 2823 Sherman Ave., Camden, NJ 08105-4428.

2.      Defendant, City of Philadelphia (hereinafter "City") is a government entity and/or political subdivision of the Commonwealth of Pennsylvania organized and existing under and by virtue of laws of the Commonwealth of Pennsylvania which maintains, operates, manages and controls the Police Department of the City which acted by and through its agents, servants and/or employees and has its offices at City Hall, Philadelphia, Pennsylvania.

## GENERAL ALLEGATIONS

3.      At all times material hereto, the Defendant acted by and through its agents, servants and/or employees, their police officers Perry Betts (badge number 6761), Thomas Liciardello (badge number 4383), Linwood Norman (badge number 5214), John Speiser (badge number 7169), Michael Spicer (badge number 5180), Brian Reynolds (badge number 4268), and Jeffrey Walker (badge number 3730),  who at all times relevant hereto purported to act and/or did act under color of state law, within the course of their duties and scope of their employment as the agents, servants and/or employees of Defendant City and its Police Department pursuant to either official policy, custom or practice of the Philadelphia Police Department and/or the City.

4.      At all times material hereto, Defendant acted either negligently, intentionally, maliciously, and/or wantonly under color of state law and authority, and/or color of office, and in reckless, intentional or callous disregard of or indifference to the rights secured to the plaintiff by federal and state laws and rules, the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and Article I. §§ 1, 8, 9, and 26 of the Constitution of the Commonwealth of Pennsylvania.

5.      At all times material hereto, the City acted by and through its aforementioned agents, servants, employees, and/or policy makers who acted in accordance with and pursuant to governmental customs, patterns, and policies, which included the failure to take disciplinary and remedial action against officers despite repeated documented records of misconduct and multiple reported abuses of authority, and committed  constitutionally offensive acts, including but not limited to the filing of false and baseless criminal charges against law abiding citizens, and the giving of false and perjurious testimony in judicial proceedings, which customs, patterns and policies were known or in the exercise of reasonable care should have been known by the Defendant City to have existed for a substantial period of time.

**FACTUAL ALLEGATIONS**

6.      Hoanh Tran was arrested on January 23rd, 2006 and charged with possession with intent to deliver, conspiracy and possession.

7.      On that date Mr. Tran was sitting in a parked truck near the corner of 10th and Cherry streets in the Chinatown section of Philadelphia.  At some point, he heard a noise, and was pulled out of his vehicle by a police officer. He was pushed to the ground and handcuffed,

3

and placed in a small, unmarked police vehicle. There were three or four City of Philadelphia Police Officers present, including officers Liciardello, Norman & Reynolds.

8.      Sometime later he was driven to a private garage. When he asked the officers what was going on, he was told to shut up and was repeatedly asked, "where's the stuff?" He was told that he could go to jail for 20 years.

9.      Eventually, Mr. Tran was taken to a police district and later to CFCF, where he remained in custody.

10.     In order to avoid a stiffer sentence upon a finding of guilt, Mr. Tran entered a guilty plea before The Honorable Rayford Means on February 21, 2007 and received a sentence of 2 ½ to 5 years' incarceration followed by 15 years reporting probation.  He was paroled after 2 ½ years to a halfway house.

11.     This was Mr. Tran's only conviction.  It was nolle-prossed on June 2, 2017.  He has not been arrested since.

12.     On the occasion of Mr. Tran's arrest, the aforementioned agents, servants, and/or employees involved were neither possessed of facts sufficient to establish probable cause to search and/or arrest Plaintiff, nor to conclude that he was engaged in unusual conduct that would lead a police officer to reasonably conclude that criminal activity was afoot and that the plaintiff was armed and dangerous.  Nonetheless, the aforementioned individual agents, servants and/or employees involved questioned, searched and detained Plaintiff.

13.     Thereafter, the aforementioned agents, servants and/or employees involved illegally arrested the Plaintiff and placed him in custody despite the fact that at all times prior

4

thereto those aforementioned agents, servants and/or employees involved had no legal justification or probable cause to stop, detain and/or arrest Plaintiff.

15.    Notwithstanding the foregoing, the aforementioned involved agents, servants and/or employees, with the acquiescence of their superiors, supervisors, and fellow officers, filed police reports reciting facts that were contrived, manufactured and untrue.

15.    The false statements manufactured by the aforementioned agents, servants and/or employees involved constituted the entirety of the evidence which was presented to the District Attorney of Philadelphia to obtain Bills of Information formally charging Plaintiff with drug offenses and/or was the basis for fabricated testimony given before Courts of Philadelphia County to support the criminal charges.

16.    By reason of the aforementioned unlawful detentions and/or arrests, the subsequent unlawfully obtained Bills of Information, and/or the perjurious testimony of the aforementioned agents, servants and/or employees involved, Plaintiff was subjected to prosecution and/or incarceration which resulted in the deprivation of his liberty and freedom.

**COUNT I**
**FEDERAL CAUSE OF ACTION: 42 U.S.C. § 1983 AND 42 U.S.C. § 1988**
**Plaintiff v. City of Philadelphia**

17.    Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

18.    Defendant City failed to exercise due care in the selection, appointment, training, retraining, supervision, discipline and control of its police officer agents, servants and/or employees, and policy makers which included the failure to take disciplinary and remedial action against officers despite repeated documented instances of misconduct and multiple reported

abuses of authority. As a direct and proximate result of the active and/or passive conduct described herein, committed under the color of state law, and while acting in that capacity, the Defendant deprived Plaintiff of the equal protection of the laws and Plaintiff's rights, privileges and immunities under the laws and the Constitution of the United States including, but not limited to Plaintiff's right to be free from false arrest, false imprisonment, unlawful searches, and malicious prosecution, to be secure in one's liberty and property, and to due process and equal protection of the law, all to Plaintiff's detriment and loss. As a result, Plaintiff suffered harm in violation of his rights under the laws and Constitution of the United States, in particular the Fourth and Fourteenth Amendments.

19.    Plaintiff will continue to suffer harm in the future in violation of his rights under the Fourth and Fourteenth Amendments of the Constitution of the United States.

20.    As a direct and proximate result of the active and/or passive conduct described herein and committed under color of law, Plaintiff sustained injuries including, but not limited to, restraint of liberty and financial loss.

21.    Defendant City of Philadelphia has tolerated, encouraged and been deliberately indifferent to:

      a.    Unjustified, unreasonable use of force by police officers;
      b.    Abuse of police powers, including physical assault, sexual assault, false arrest, malicious prosecution, harassment and improper searches;
      c.    Misrepresenting facts in order to establish probable cause where none would otherwise exist;
      d.    Arresting and incarcerating citizens without probable cause with no intention of seeking criminal prosecutions;
      e.    Psychologically and emotionally unfit persons serving as police officers and;
      f.    Failure of other police officers to prevent, deter, report, or take action against the unlawful conduct of police officers;
      g.    Allegations of sexual assault and/or harassment;

h.   Failure of other police officers to prevent, deter, report, or take action regarding allegations of physical and/or sexual assault and/or harassment specifically.

22.   Defendant City of Philadelphia has tolerated, encouraged and been deliberately indifferent to the following patterns, practices, and customs and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a.   Unlawful use of force, unlawful detentions, unlawful arrests, and malicious prosecution by police officers;

b.   The proper exercise of police powers, including but not limited to unlawful use of force, unlawful arrest, unlawful detention and malicious prosecution;

c.   The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

d.   The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

e.   The use of their status by police officers to employ unlawful arrests, malicious prosecutions, invocation of the Code of Silence and/or to achieve ends not reasonable or justifiably related to their duties as police officers;

f.   The failure of police officers to follow established policies, procedures, directives, and instructions regarding the use of arrest powers under such circumstances as presented in this case;

g.   The refusal of police officers to report or provide information concerning the misconduct of other police officers; and

h.   Physical assault by police officers.

23.   Defendant City of Philadelphia is deliberately indifferent to the need to train and supervise police officers.

24.   Defendant City of Philadelphia has intentionally and with deliberate indifference to the rights of persons, such as Plaintiff, failed to establish a system which properly identifies, reports and/or investigates instances of improper conduct, and thereby permitted, encouraged

7

and tolerated a pattern and practice of employees, officials, and agents, including agents in this case, in abusing their powers.

25.     Defendant City of Philadelphia is deliberately indifferent to the need to discipline police officers as evident from the fact that the internal mechanism adopted by the Defendant City to ensure appropriate oversight of police conduct, the Internal Affairs Division (IAD) of the Philadelphia Police Department, has long proven to be ineffective in imposing meaningful disciplinary and remedial actions, thereby allowing unlawful conduct to be repeated.

26.     Defendant City of Philadelphia, as a matter of policy or practice, has, with deliberate indifference to the rights of persons such as Plaintiff, failed to adequately sanction and/or discipline its employees, officials, and agents, including those involved in this case, for violations of the rights of individuals, thereby causing agents in this case to engage in the unlawful conduct described herein.

27.     Defendant City of Philadelphia has failed to properly sanction and/or discipline its employees, officials, and agents who commit, are aware of and conceal and/or aid and abet constitutional violations by other police officers, thereby encouraging police offers to violate the rights of citizens without fear of discipline.

28.     Defendant City of Philadelphia has a longstanding history over many decades of failing to act to stem the rampant commission of constitutional violations by its police. Specifically, Defendant City of Philadelphia has a longstanding history of denying, tolerating, excusing, and otherwise willfully ignoring physical assault by police officers against the citizens of the Commonwealth.   The inadequate systems and mechanisms in place to train, supervise and discipline officers in order to prevent this type of behavior led to a pattern of constitutional

violations by police officers **including 170 grievance cases going back to 2011 that were previously kept secret by the City of Philadelphia** and not reported in any media outlet until The Philadelphia Inquirer brought them to light in an article dated September 12, 2019: "Fired, Then Rehired." (Exhibit "A") Of these 170 cases "…the city has paid 26 officers at least $1.2 million in back pay and other payments.  In addition, the city has paid nearly $4 million to settle federal lawsuits involving 15 of the officers."  (Philadelphia Inquirer, "Fired, Then Rehired" September 12, 2019.)

29.    Defendant City of Philadelphia has engaged in secrecy to hide its pattern and practice of failure in addressing constitutional violations by its police officers.  Nothing serves as a better example of the City's preference to excuse and hide police misconduct than the case of City of Philadelphia Chief Inspector Carl Holmes, who engaged in a pattern and practice of misconduct that spanned fifteen (15) years.  A Philadelphia Inquirer Special Report dated December 5, 2019 and based on court documents, deposition transcripts, and police records alleged that his misconduct was "well known to officials in the Philadelphia Police Department, the District Attorney's Office, and City Hall." (Philadelphia Inquirer, "How A Flawed System Hid A Philly Police Commander's Sexual Misconduct For 15 Years" December 5, 2019.) (Exhibit "B") The article discussed "the systemic flaws that shielded him and other top police officials." In the article, City Controller Rebecca Rhynhart stated that his history "lays bare how **broken the city's procedures are for handling complaints…"** (emphasis added).  The article also faulted the discipline meted out as "**negligible**" in the "**rare instances where punishments are doled out**." (Philadelphia Inquirer, "How A Flawed System Hid A Philly Police Commander's Sexual Misconduct For 15 Years" December 5, 2019.)

30. The failure of the City to adequately address misconduct by City of Philadelphia Police Officers was lamented by former City of Philadelphia Police Commissioner Charles H. Ramsey: "Philly is not a bad police department at all… But it will never realize its full potential as long as you have a system in place like this." (Philadelphia Inquirer, "Fired, Then Rehired" September 12, 2019.)

31. The City failed not only in adequately disciplining these officers. Defendant City of Philadelphia has consistently failed to fire and/or has re-hired police officers accused of similar constitutional violations.

32. The failure of the City to adequately address misconduct by City of Philadelphia Police Officers was highlighted by Internal Affairs Lt. Raymond Saggese, when he stated under oath at a deposition in 2016 that: "There's a lot of officers that are out there right now that I wish were off the force because they're criminals…And unfortunately, the legal aspects of our city and arbitration and union and all put these people back on the job…No matter how much I fight, scream, yell, beg and holler, they are still back on the job." (Philadelphia Inquirer, "How A Flawed System Hid A Philly Police Commander's Sexual Misconduct For 15 Years" December 5, 2019.)

33. The failure of the City to adequately address misconduct by City of Philadelphia Police Officers was also addressed by Retired Police Chief Inspector, Anthony DiLacqua, who oversaw Internal Affairs from 2008 to 2010: "He and his investigators had no say in how discipline was meted out…they were often dismayed when cops returned to the force after Internal Affairs had determined the officers committed serious offenses." (Philadelphia Inquirer, "Fired, Then Rehired" September 12, 2019.)

34.    In addition to the alarming number of cases highlighted in the two aforementioned articles are four (4) more recent arrests of police officers for assault and even murder, three of which that occurred within a single three-week period.  The Philadelphia Inquirer has reported on each one of those arrests in the following articles:

"Philly cop charged with sex assault on minor" January 22, 2021. (Exhibit "C")

"Philly cop arrested for allegedly violating court protection order" February 4, 2021. (Exhibit "D")

"Philly police officer arrested for 2019 incident, department says" January 13, 2021. (Exhibit "E")

"Former Philly police officer charged with murder in 2017 shooting of an unarmed black man" Updated: October 9, 2020. (Exhibit "F")

35.    One of the officers, Rahim Montgomery, charged with sexual assault of a minor was still on the force at the time of his arrest even after being named as a "problem cop" by former District Attorney Seth Williams in 2018 (See Philadelphia Inquirer, "Philly cop charged with sex assault on minor" January 22, 2021, pg. 2). (Exhibit "C") The aforementioned "problem cop" moniker refers to a list of "66 current or former Philadelphia police officers whom former District Attorney Seth Williams identified as facing allegations of misconduct on and off the job" (Philadelphia Inquirer "The full list of Philadelphia's 66 problem cops" https://www.inquirer.com/crime/inq/full-list-philadelphias-66-problem-cops-20180316.html#textjump). (Exhibit "G")

36.     Defendant City of Philadelphia has, by the above-described actions and omissions, deprived the Plaintiff of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983.

37.     All of the above violations were the result of specific decisions and/or acquiescence to a well settled custom and practice by policymakers for the City, including but not limited to Mayors John Street, Michael Nutter and Jim Kenney, Police Commissioners Charles Ramsey and Rick Ross, and City Controllers Alan Butkovitz and Rebecca Rhynhart. As such, the City is responsible for the violations of Plaintiff's constitutional rights.

38.     To the extent any of the above unconstitutional actions were not decided or authorized by City policymakers, all such actions were the result of decisions by City policymakers to delegate such decision-making authority to the persons who did authorize and direct the unconstitutional conduct.

39.     To the extent any of the individual agents acted outside the authorization and direction of City policymakers or the persons to whom policymaking authority was delegated, the City is responsible for failing to properly train, supervise, and/or discipline the officers who so acted. Given the city's poor history with regard to constitutional violations, its failures in this regard were with deliberate indifference to the risk of those constitutional violations.

40.     As a direct and proximate cause of the actions of Defendant, Plaintiff suffered the following injury and damages:

> a. Violation of his constitutional rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania; and in particular, his rights to be

free in his person, to be free of unreasonable searches and seizures, to be free of

excessive force, and to due process and equal protection under the law;

b. Loss of his physical liberty; and

c. Physical pain and suffering and emotional trauma and suffering, some or all of

which may be permanent.

41.     As a direct result of the intentional improper and unlawful acts of Defendant's

agents in this case, Plaintiff suffered from, and continues to suffer from a loss of life's pleasures.

**COUNT II**
**FALSE IMPRISONMENT**

42.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint as set

forth above.

43.     By the conduct set forth above Defendant caused and intended to cause Plaintiff

to be confined by the threat and use of physical force and duress.

44.     As a result of the conduct described above, Plaintiff was in fact confined without

his consent and against his will.

45.     As a direct and proximate result of the aforementioned conduct, Plaintiff suffered

physical pain and injury, and continues to suffer emotional distress, humiliation, mental pain and

anguish.

**COUNT III**
**MALICIOUS ABUSE OF PROCESS OF LAW**

46.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set

forth above.

47.     The aforesaid acts of the aforementioned agents, servants, employees and/or policy makers involved constituted an improper use of process employed for an unlawful purpose, to wit, the wrongful arrest, detention, prosecution and incarceration of Plaintiff.

**COUNT IV**
**MALICIOUS PROSECUTION**

48.     The averments of Paragraphs 1 through 21, inclusive, of this Complaint, to the extent they are relevant herein, are incorporated by reference as if they were set forth *in extenso*.

49.     The aforesaid acts on the part of the aforementioned agents, servants and/or employees were performed maliciously and without reasonable or probable cause and the criminal prosecution of the plaintiff was malicious and without justification.

**COUNT V**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

50.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

51.     The aforesaid outrageous conduct of the Defendant acting by and through its aforementioned agents, servants, employees and/or policy makers was performed intentionally, recklessly and/or wantonly so as to cause severe and continuing emotional distress to the plaintiff.

**COUNT VI**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

52.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

53.    The aforesaid conduct of the Defendant acting by and through its aforementioned agents, servants, employees and/or policy makers was performed carelessly so as to result in the negligent infliction of emotional distress.

**COUNT VIII**
**CONSPIRACY**

54.    Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

55.    The aforesaid acts were performed by Defendant's aforementioned agents, servants and/or employees, while acting under color of law and/or under color of office and in the performance of their official duties, pursuant to an agreement between and among them entered into prior to 2006 and continuing thereafter, to deprive individual citizens, including the plaintiff, of the rights, privileges and immunities guaranteed by the Constitutions and laws of the United States and the Commonwealth of Pennsylvania, including but not limited to the right to be free from detention and seizure and the right to be free from loss of liberty and property without due process of law.

56.    In furtherance of the conspiracy, and while acting under color of law and in the performance of their official duties, the aforementioned agents, servants and/or employees involved illegally accosted citizens on the streets of Philadelphia, Pennsylvania and conducted searches of their homes without warrants or with constitutionally infirm warrants and on the streets of Philadelphia, Pennsylvania. Furthermore, they falsely accused citizens of criminal conduct and/or of possessing contraband which they either already had in their possession or subsequently obtained, thereafter filing false police reports, which along with the physical evidence, was presented to the District Attorney of Philadelphia and/or to the Courts of

Philadelphia County for the purpose of prosecuting, and in most instances, inducing guilty pleas or securing convictions resulting in the incarceration of innocent individuals.

57.    The acts of Defendant's aforementioned agents, servants and/or employees were intended to defame Plaintiff, injure their reputation and deprive them of their freedom and such intent continued throughout the prosecution of these matters and thereafter.

58.    Plaintiff pleads, in the alternative, that the aforementioned agents, servants, employees and/or policy makers involved acted negligently, recklessly and/or wantonly in the detention, custody and prosecution of Plaintiff so as to cause him to suffer the aforesaid injuries and damages.

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00) and requests the following relief pursuant to 42 U.S.C. §1988 and laws of the Commonwealth of Pennsylvania:

a.    Declaratory judgment;

b.    Compensatory damages;

c.    Reasonable attorney's fees and costs; and

d.    Other and further relief as this Court may deem appropriate.


Dated:                                        _____/s_____
                                                   EVAN S. SHINGLES
                                                   Attorney for Plaintiff

16